**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **JUL 0 8 2010** ★

**BROOKLYN OFFICE**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

WILLIAM DUFFY, GENE PANESSA and
JAMES MASCARELLA,

                              Plaintiffs,

        -against-

INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 14-14B, GEORGE
STAMBOULODIS, EDWIN L. CHRISTIAN,
WALTER J. MC KENNA, CHRISTOPHER T.
CONFREY, JOHN R. POWERS, DANIEL NOESGES,
ROBERT LiMANDRI, and THE NEW YORK CITY
DEPARTMENT OF BUILDINGS,

                              Defendants.

-----------------------------------------------------------------------X

Docket No.: 10 CV 3111

Cogan, J.

**Memorandum of Law in Support of Plaintiff's Motions For a
Temporary Restraining Order and Preliminary Injunction**

LA REDDOLA, LESTER & ASSOCIATES, LLP
By: Robert J. La Reddola, Esq.
    *Attorneys for Plaintiffs*
    600 Old Country Road, Suite 224
    Garden City, New York 11530
    (516) 745-1951

## Preliminary Statement

This Memorandum of Law is submitted in support of Plaintiffs' Order to Show Cause and Temporary Restraining Order seeking a temporary injunction (i) staying Respondent INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 14-14B ("Local 14" or the "Union"), as well as any officer, member or agent thereof, including but not limited to, EDWIN L. CHRISTIAN, WALTER J. MC KENNA, CHRISTOPHER T. CONFREY, JOHN R. POWERS and DANIEL NOESGES, as well as GEORGE STAMBOULODIS, from suspending or revoking Plaintiffs' membership in the Union, commencing disciplinary proceedings against the Plaintiffs or taking any other actions that could affect the Plaintiffs' membership in the Union; and (ii) staying THE NEW YORK CITY DEPARTMENT OF BUILDINGS (the "DOB"), as well as any officer or agent thereof, including, but not limited to, ROBERT LiMANDRI, from suspending, revoking, or taking any action that would affect, Plaintiffs' Hoist Machine Operator licenses, including but not limited to the OATH proceedings currently pending, brought by the DOB against each Plaintiff.

This action seeks a permanent injunction barring the Union and STAMBOULODIS from applying the Consent Decree and Judgment in Civil Action No. 08-3046 (the "Consent Decree"), annexed to the Complaint as Exhibit 1, retroactively to Plaintiffs, who plead guilty to crimes over five years ago and have completely served their sentences and have been rehabilitated. (See Exhibit 1, Summons and Complaint, Exhibit 1, Consent Decree). It is undisputed that the Consent Decree was not in effect at the time that Plaintiffs were arrested and plead guilty. In fact the Consent Decree has still not been ratified by the Union.

This action also seeks a permanent injunction preventing the DOB from suspending or revoking the Plaintiffs' Hoisting Machine Operator licenses on the basis of "poor moral

character" under New York City Administrative Code § 28-401.19(13) or lack of "good moral character" as required to obtain a license under Section 28-401.6 of the New York City Administrative Code, as the terms "poor moral character" and "good moral character" are undefined, making these statutes unconstitutionally vague and therefore the application of these statues as against Plaintiffs violates their right to due process as guaranteed by the Fourteenth Amendment.

A temporary restraining order and preliminary injunction are warranted in this action as the Plaintiffs would be irreparably injured absent this relief. In addition to a violation of their Constitutional and State law rights, Plaintiffs will be deprived of their livelihood and suffer severe economic harm. Furthermore, Plaintiffs have a probability of success on the merits on all five Counts in the Complaint. These cause of actions sound in a violation of Plaintiffs' Fourteenth Amendment right to due process based upon an unconstitutionally vague statute in the New York City Administrative Code, a violation of the Consent Decree and violations of human rights laws, both New York State and New York City statutes enacted to prevent discrimination in licensing and employment against people who had previously been convicted of a crime but have completely served the resulting sentences. The requested preliminary injunction and temporary relief sought in this action will preserve the status quo, which necessarily will not harm the Defendants. On the other hand, if the temporary relief and preliminary sought does not issue, the Plaintiffs will be severely harmed in that their rights will continue to be violated and they will suffer severe economic harm as without Union membership and a Hoisting Machine Operator license it is almost impossible to find work as a crane operator, which is the Plaintiffs' livelihood. Finally, serious questions exist as to the Constitutionality of the New York City Administrative Code "moral character" requirement, the scope of the consent

3

decree and the applicability of New York State and New York City's human rights laws to the Union.

Accordingly a temporary restraining order and preliminary injunction are not only warranted but necessary in this action.

### Factual Background

A. **The Consent Decree.**

On or around July 28, 2009, Justice Sterling Johnson, United States District Court Judge So Ordered Consent Decree and Judgment, entered into between the United States Attorney's Office and Local 14, in a matter known as <u>United States of America v. Local 14-14B of the International Union of Operating Engineers, AFL-CIO, 83-3046</u> (EDNY) (Johnson, J.) (Azrack, M.J.). ("Consent Decree") (See Exhibit 1, Summons and Complaint, Exhibit 1, Consent Decree).

Under the Consent Decree, Local 14 consented to the appointment of an Ethical Practices Attorney, STAMBOLIDIS.

The Consent Decree included as an attachment, a six page Amendment to the I.U.O.E. 14-14 Bylaws, related to Democratic Practices, Financial Practices, Union Officers & Representatives, Business and Financial Activities of Union Officials, and Prohibited Conduct. (See Attachment 2, Amendment to I.U.O.E. Local 14-14B Bylaws, provided under separate cover to Exhibit 1, Summons and Complaint, as Exhibit 1).

The effective date of this consent decree is determined to be "upon the filing of this executed Consent Decree in the District Court", shown on PACER to be on around July 28, 2009.

STAMBOLIDIS was appointed thereafter on or about November 24, 2009 to act in accordance with the terms of the Consent Decree.

4

**B.**   **The Letter by George Stamboulodis, Ethics Compliance Officer, Dated March 16, 2010 threatening disciplinary proceedings against Duffy, Panessa and Mascarella for conduct in 2003**

Around March 16, 2010, STAMBOULIDIS sent a one page letter to Plaintiffs, and upon information and belief, 28 others, all of a similar nature type stating:

*******************************************

"Section IV(B)(6) of the Consent Decree authorizes the EPA (Ethical Practices Attorney) to commence disciplinary proceedings against, among others, Local 14 Members who violated the IUOE's Constitution, IUOE's Code of Ethics or Local 14's By-Laws, or who engaged in corruption as defined by the Consent Decree. "Under this Authority I am considering commencing disciplinary proceedings against you for violations of, among other things, (1) Article XXIV, Subdivisions 7, Section (e) of the IUOE's Constitution, (2) Articles III(D), V(A), V(D) and VI(A) of the IUOE's Code of Ethics; and Section III of the Consent Decree.

Should you desire an opportunity to advocate as to why disciplinary proceedings should not be commenced against you for violation of the above reference provisions of the IUOE's Constitution and Code of Ethics and the Consent Decree, you must make arrangements for such advocacy within 20 days from the date of this letter."

(See Exhibit 2).

DUFFY, PANESSA and MASCARELLA had pled guilty to crimes and served probation or prison time, none over 150 days in duration. The letter is in clear violation of the powers of the Ethical Practices Attorney based upon the enactment date, and the fact that the 28 individuals notified were arrested at least six years prior.

Upon information and belief, the Ethical Practices Attorney did not seek to purge all persons with criminal arrest history, but only those involved in the one matter, in a discriminatory manner.

In the cases of DUFFY, PANESSA and MASCARELLA, all three individuals had all completed their probation years prior even to the enactment of the July 28, 2009 Consent Decree. DUFFY, PANESSA and MASCARELLA had no other or further involvement with the criminal

justice system before or since the 2003 arrest.  DUFFY, PANESSA and MASCARELLA have all filed for Certificates of Relief of Disabilities related to their employment.

The threatened disciplinary proceedings which may result in removal from the membership of Local 14, violates the Consent Decree, is in excess of the mandate of the Court, and is an abuse of the Consent Decree towards the three Plaintiffs and others similarly situated.

Further, the conduct of Defendants in all cases is a clear violation of New York State Human Rights Law Executive Law 296, and Corrections Law 750 et seq., and the New York City Human Rights Law all of which protect the rights of persons who discriminate against previously convicted persons or by reason of a finding of them lacking "good moral character".

Executive Law §296, and Corrections Law §750, the Certificate of Relief From Disabilities process all are designed to promote rehabilitation of individuals rather than continued punishment of persons previously convicted.

### C.   Actions by the Union to Amend Their Bylaws, as Set Forth in Attachment 2 to the Consent Decree, are Beyond the Scope of the Consent Decree

On or around April 7, 2010, Local 14 issued a notice that it was seeking a Resolution to make amendments to the Bylaws as required by the Consent Decree. (See Exhibit 3).

The Consent Decree required the Bylaws to be amended to include Attachment 2 set forth above. (See Exhibit 1, Summons and Complaint, Exhibit 1, Consent Decree, pages 46-51).

The Consent Decree did not require the adoption of the following additional amendments to Article VIII, by adding new Sections 3 and 4 stating:

SECTION 3. In the event that any officer, agent, member, representative or employee of this Local Union is named in an indictment or other charging criminal document accusing the individual of: (1) any violation of federal or state law involving the operation of a labor organization or an employee welfare or pension benefit plan; or (2) felony violation of federal or state law relating to Corruption as defined in Section II.C of the Consent Decree dated July 25, 2008, then such individual will be placed on temporary leave of absence during the pendency of the matter.

SECTION 4: In the even that the officer, agent, member, representative or employee of this Local Union identified in SCTION 3, above is convicted of: (1) violating federal or state law involving the operation of a labor organization or an employee or welfare or pension benefit plan; or (2) violating federal or state law concerning Corruption as defend in Section II.C of the consent decree entered into between the Local Union and the U.S. Attorney's Office dated July 25, 2008, then such individual shall (1) immediately forfeit his or her elected or appointed position within this Local Union and shall not receive any retirement benefits other than those that have vested under Title I of ERISA and which are protected by anti-alienation provisions of ERISA; (2) be ineligible to vote in future Local Union elections; and (3) be ineligible to be nominated for, elected to, or hold any elected or appointed office within this Local Union.

(See Exhibit 3, page 2).

Upon information and belief, Proposed Section 3, empowers Local 14 or STAMBOLIDIS to "place on temporary leave" any person alleged to be in violation of laws or "Section II.C of the Consent Decree dated July 25, 2008" in violation of the rights of the plaintiffs.

Such authority as interpreted by STAMBOLIDIS would also relate back to prior criminal convictions even as early as arrests from 2003, despite the language which appears to looks towards future conduct.

However, STAMBOLIDIS has already threatened violations of the Bylaws to be actionable by him in his letter dated March 16, 2010 under the Consent Decree.

Such an enactment by Local 14, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 14-14B, GEORGE STAMBOULODIS, EDWINL. CHRISTIAN, WALTER J. MC KENNA, CHRISTOPHER T. CONFREY, JOHN R. POWERS, DANIEL NOESGES would be tantamount to allowing STAMBOULIDIS an additional grounds for the "placement on temporary leave" of DUFFY, PANESSA and MASCARELLA.

Such a result was not required or contemplated by the Consent Decree.

Accordingly, counsel for the Plaintiffs notified Local 14, EDWIN L. CHRISTIAN, WALTER J. MC KENNA, CHRISTOPHER T. CONFREY, JOHN R. POWERS, and DANIEL NOESGES by letter dated June 10, 2010 that if it did not limit the proposed resolution by time, and bar past conduct, we would have no choice but to commence an action, to prevent the wrongful enforcement (suspension) by STAMBOLIDIS of the Proposed Amendment to the By Laws to force a "temporary leave of absence during the pendency of the matter" against the Plaintiffs.

Upon information and belief, there is no other reason for the Proposed Amendment other than to force Plaintiffs and others similarly situated to be immediately suspended.

Since the letter was sent on June 10, 2010 no reply has been received by Local 14, EDWIN L. CHRISTIAN, WALTER J. MC KENNA, CHRISTOPHER T. CONFREY, JOHN R. POWERS, and DANIEL NOESGES indication they will limit the language to future acts.

Upon information and belief, the vote to amend the By Laws shall take place on or before the week of July 5, 2010.

**D.    At The Same Time, Building Department of the City of New York Seeks License Suddenly Seeks Revocation of Plaintiff's License.**

On or around May 7, 2010, LiMANDRI and the DOB filed the following charges against WILLIAM DUFFY at the New York City Office of Administrative Trials and Hearings, alleging:

CHARGE 1:          New York City Administrative Code Section
                   28-401.19(13): Poor moral character that
                   Adversely reflects on his or her fitness
                   To conduct work regulated by this Code.

SPECIFICATION 1:   On or about September 29, 2004,
                   In the United States District Court, Southern
                   District of New York, Respondent pled guilty

To Title 18, United States Code Sections 1951, 3147(1), Conspiracy to Commit Extortion. Such conduct constitutes poor moral character and is in violation of New York City Administrative Code Section 26-133, which was in effect at the time of the conduct and has been remembered as Section 28-401.6, which mandates that a person who is given a Hoist Machine Operator license from the Department of Buildings "shall be of good moral character."

CHARGE 2:          New York City Administrative Code Section 28-401.19(7): Failure to comply with this code or any order, rule or requirement lawfully made by the commissioner, including failure to cooperate with investigations related to the trade for which the individual is licensed conducted by the commissioner or other government entity.

SPECIFICATION 2:   On or about September 29, 2004, in The United States District Court, Southern District of New York, Respondent pled guilty to Title 18, United States Code Section 1951, 3147(1), Conspiracy to Commit Extortion. Such conduct constitutes a failure to comply with the New York City Administrative Code Section 26-133, which was in effect at the time of the conduct and has been remembered as Section 28-401.6, which mandates that a person who is given a Hoist Machine Operator license From the Department of Buildings "shall be of Good moral character."

(See Exhibit 5).

No charges assert that in 2010, or upon the most recent renewal, DUFFY is not of "Good Moral Character."

On or around May 7, 2010, LiMandri and the DOB filed the following charges against GENE PANESSA at the New York City Office of Administrative Trials and Hearings, alleging:

CHARGE 1:          New York City Administrative Code Section
28-401.19(13): Poor moral character that
Adversely reflects on his or her fitness to
Conduct work regulated by this Code.

SPECIFICATION 1:  On or about January 10, 2005, in the United
States District Court, Southern District of New
York, Respondent pled guilty to Title 18, United
States Code Section 2, 1341, 1346, Mail Fraud.
Such conduct constitutes poor moral character and
is a violation of New York City Administrative
Code Section 26-133, which was in effect at the
time of the conduct and has been remembered
as Section 28-401.6, which mandates that a person
who is given a Hoist Machine Operator license
from the Department of Buildings "shall be of
good moral character."

CHARGE 2:         New York City Administrative Code Section
28-401.19(7) Failure to comply with this Code
Or any order, rule or requirement lawfully made
By the commissioner including failure to
Cooperate with the investigations related to the
Trade for which the individual is licensed
Conducted by the commissioner or other
Government entity.

SPECIFICATION 2:  On or about January 10, 2005, in the
United States District Court, Southern District
Of New York, Respondent pled guilty to Title
18, United States Code Sections 2, 1341, 1346,
Mail Fraud. Such conduct constitutes a failure
to comply with New York City Administrative
Code Section 26-133, which was in effect at the
time of the conduct and has been remembered
as Section 28-401.6, which mandates that a
person who is given a Hoist Machine Operator
license from the Department of Buildings
"shall be of good moral character".

(See Exhibit 6).

No charges assert that in 2010, or upon the most recent renewal, PANESSA is not of

"Good Moral Character."

Even so, on or around May 2010, LiMANDRI and the DOB filed the following charges
against JAMES MASCARELLA at the New York City Office of Administrative Trials and
Hearings alleging:

CHARGE 1:           New York City Administrative Code Sec.
                    28-401.19(13): Poor moral character
                    that adversely reflects on his or her
                    fitness to conduct work regulated
                    by this Code.

SPECIFICATION 1:    On or about September 27, 2004, in the
                    United States District Court, Southern
                    District of New York, Respondent pled
                    guilty to Title 18, United States Code
                    Sections 1951, 3147(1), Conspiracy to
                    Commit Extortion.  Such conduct
                    constitutes poor moral character and is
                    A violation of New York City Administrative
                    Code Section 26-133, which was
                    in effect at the time of the conduct and has
                    been remembered as Section 28-401.6, which
                    Mandates that a person who is given a
                    Hoist Machine Operator license from the
                    Department of Buildings "shall be of good
                    moral character."

CHARGE 2:           New York City Administrative Code Sec. 28-401.19(7)
                    Failure to comply with this code or any order, rule
                    or requirement lawfully made by the commissioner
                    including failure to cooperate with investigations
                    related to the trade for which the individual is
                    licensed conducted by the commissioner or other
                    government entity.

SPECIFICATION 2:    On or about September 27, 2004, in the
                    United States District Court, Southern District
                    Of New York, Respondent pled guilty to Title
                    18, United States Code Sections 1951, 3147(1),
                    Conspiracy to Commit Extortion. Such conduct
                    constitutes a failure to comply with New York
                    City Administrative Code Section 26-133, which
                    was in effect at the time of the conduct and has
                    been remembered as Section 28-401.6, which
                    mandates that a person who is given a Hoist

Machine Operator license from the Department
of Buildings "shall be of good moral character."

(See Exhibit 7).

No charges assert that in 2010, or upon the most recent renewal, MASCARELLA is not
of "Good Moral Character."

In each case, the DOB and LIMANDRI apply New York City Administrative Code
Section 28-401.19(13). However, no definition of Good Moral Character exists in the law
making the statute totally subjective as to when it applies (the time of the arrest, years later at the
time of revocation, etc.).

**WILLIAM DUFFY:**

DUFFY is a currently a member of the INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 14-14B ("Local 14" or the "Union") and has been since June 5, 1984.

He states in his affidavit to be a licensed Hoisting Machine Operator and have been since
2000.  His license was renewed in 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008 and 2009.
His current license does not expire until 2012.

DUFFY has had his Cherry Picker license since April 23, 1992.

DUFFY was arrested in 2003.  He indicates in his Affidavit to have disclosed this
information on all subsequent renewal applications for his Hoisting Machine Operator license.

On or about September 29, 2004, he plead guilty to conspiring to commit extortion and
was sentenced to 113 days of incarceration and assessed a fine of $3,000.

He then completed his sentence, as well as probation, paid the fine, and returned to work
immediately after his incarceration.

He remained at all times a member of Local 14 as well as a licensed Hoisting Machine
Operator.

12

On or around May 7, 2009 he appeared to answer questions of the New York City Department of Investigation related to my license pertaining to my arrest in 2003 and subsequent guilty plea and resulting sentence.

He indicates he answered their questions and my Hoisting Machine Operator license was renewed.

On or about March 16, 2010 DUFFY received a letter from GEORGE STAMBOULIDIS threatening to commence a disciplinary hearing against him. (See Exhibit 2).

Similarly, on or about May 7, 2010, the DOB filed a petition against DUFFY with the New York City Office of Administrative Trials and Hearings. (See Exhibit 5).

### GENE PANESSA:

GENE PANESSA is currently a member of the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 14-14B ("Local 14" or the "Union") and has been since about June 2001.

He is a licensed Hoisting Machine Operator and have been since about August 2005. My license was renewed in 2006, 2007 and 2008. He states in his affidavit that his license was reissued again in February 2010 when he submitted his National Commission for the Certification of Crane Operators ("NCCCO") Certification. His current license does not expire until August 2011.

He was arrested in 2003. All information related to his arrest and conviction was disclosed this information on all subsequent renewal applications for his Hoisting Machine Operator license.

On or about September 29, 2004, PANESSA plead guilty to mail fraud and was sentenced to six months supervised release and two years probation. He was not incarcerated.

13

PANESSA was able to work while carrying out his sentence. No work was missed.

He has remained at all times a member of Local 14 as well as a licensed Hoisting Machine Operator.

In or around October 29, 2009 PANESSA appeared to answer questions of the DOB Building Special Investigations Unit related to my license pertaining to my arrest in 2003 and subsequent guilty plea and resulting sentence.

He answered their questions and was Hoisting Machine Operator license was reissued in February 2010 to reflect that he was NCCCO certified.

On or about March 16, 2010 he received a letter from GEORGE STAMBOULIDIS threatening to commence a disciplinary hearing against him.  It was very similar to the letter that WILLIAM DUFFY received, which is annexed, under separate cover as Exhibit 2.

Similarly, on or about May 7, 2010, the DOB filed a petition against him with the New York City Office of Administrative Trials and Hearings.  (See Exhibit 6).

He filed an Amended Answer to Petition on or about June 30, 2010.  (See Exhibit 8).

PANESSA would be irreparably harmed if he were to lose his membership in the Local 14 or his Hoisting Machine Operator license, even for a brief period of time, as working as a union crane operator is his livelihood.

He served the sentence that the Court set down and has been completely rehabilitated. He should not be punished again for a mistake he made back in 2003.

**James Mascarella:**

As stated by JAMES MASCARELLA in his accompanying affidavit, he is currently a member of the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 14-14B ("Local 14" or the "Union") and has been since 1982.

14

MASCARELLA has been a licensed Hoisting Machine Operator since 1984. His license was renewed annually through July 31, 2008. His current license does not expire until 2010.

MASCARELLA was arrested in 2003. He indicates that he disclosed all information related to this arrest on all subsequent renewal applications for my Hoisting Machine Operator license whenever asked.

On or about September 29, 2004, MASCARELLA plead guilty to conspiring to commit extortion and was sentenced to five months (150 days) of incarceration, five months of supervised release and assessed a $2,000 fine. He completed his sentence and paid his fine. He then returned to work immediately after incarceration.

He has remained at all times a member of Local 14 as well as a licensed Hoisting Machine Operator.

On or around January 20, 2009 MASCARELLA appeared to answer questions of the New York City Department of Investigation related to his license pertaining to his arrest in 2003 and subsequent guilty plea and resulting sentence.

He answered all questions and even so had his Hoisting Machine Operator license was renewed.

On or about March 16, 2010 MASCARELLA received a letter from GEORGE STAMBOULIDIS threatening to commence a disciplinary hearing or a form similar to the form sent to WILLIAM DUFFY, annexed hereto as Exhibit 2.

Similarly, on or about May 7, 2010, the DOB filed a petition against me with the New York City Office of Administrative Trials and Hearings so MASCARELLA would stand to both lose union membership and his license around the same time. (See Exhibit 7).

He states he will be irreparably harmed if he was to lose his membership in the Local 14 or my Hoisting Machine Operator license, even for a brief period of time, as working as a union crane operator is his livelihood.

MASCARELLA indicated that he has both served his time and been completely rehabilitated since the events long ago.

The Department of Buildings and LiMANDRI in each of the three cases above, cited "poor moral character" relating back to 2003 and 2004, for revocation in 2010.

No evidence is presented for "poor moral character" in May 2010 when the charges are brought other than the past criminal arrest history.

The sole grounds asserted for evidence of "poor moral character" relate back to events of 2003 and 2004 not relevant since the license has been renewed annual for each plaintiff in 2003, 2004, 2005, 2006, 2007, 2008 and 2009 despite full knowledge and disclosure of the arrest by each Plaintiff licensee.

In a similar case, Dep't of Buildings v. Inglese, OATH Index No. 929/10 (Feb. 4, 2010). LiMANDRI revoked the license of the licensee even where the Hearing Officer recommended a one year suspension as no nexus was proven between the past criminal conduct and the license to operate a crane. (See Exhibit 11).

Upon information and belief, LiMANDRI and the DOB are not following any procedure which would satisfy due process under the 14th Amendment of the Constitution, as revocation is applied even when the OATH Hearing officer recommends otherwise.  (See Dep't of Buildings v. Inglese, OATH Index No. 929/10 (Feb. 4, 2010), annexed hereto as Exhibit 11; Exhibit 12, Letter from LiMandri to Inglese revoking his license).

16

### E.     Local 14 Amendment to Bylaws

The Consent Decree contains amendments to the Union's Bylaws, purportedly necessary

to adopt the Consent Decree. (See Exhibit 1, Summons and Complaint, Exhibit 1, Consent

Decree). However, these amendments are above and beyond what is required to adopt the

Consent Decree and, upon information and belief, above and beyond the scope of the Consent

Decree as contemplated by the Court. (See Exhibit 3). These amendments would give the

Ethical Practices Attorney the power to immediately suspend union members in advance of a

hearing, thereby undermining the authority of the Hearing Officer as contemplated by the Court.

## Argument

### I.     Plaintiffs are Entitled to Injunctive Relief to Preserve the
### Status Quo and Prevent Irreparable Harm

"To obtain a preliminary injunction the moving party must show, first irreparable injury,

and second, either (a) likelihood of success on the merits, or (b) sufficiently serious questions

going to the merits and a balance of the hardships decidedly tipped in the movant's favor."

Green Party of New York State v. New York State Board of Elections, 389 F.3d 411, 418 (2d

Cir. 2004) (citing Jackson Daiory, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.

1979); see also In re Northwest Airlines Corporation, 483 F.3d 160 (2d Cir. 2007).

As set forth below, Plaintiffs' will be irreparably harmed if their rights, both under the

Constitution and New York State law, are allowed to be violated by the Defendants.  In addition

to a violation of their rights, Plaintiffs will be deprived of their livelihood and suffer severe

economic harm.

In the absence of a preliminary injunction, Plaintiffs' will be discriminated against in

violation of New York State law and have an unconstitutionally vague statute applied to them in

violation of their Constitutional right to due process.  Plaintiffs' will be successful on these

claims as "good moral character" and "poor moral character" are undefined in the New York City Administrative Code and yet these arbitrary standard are being used as a basis for bring in an OATH proceeding against the Defendants, as a result of which their Hoisting Machine Operator licenses could, and probably will, be suspended or revoked.  Furthermore, New York State law is clear that a person cannot be discriminate against for a previous conviction after they have completed their sentence and are completely rehabilitated.  However, without a preliminary injunction it will be a hollow victory for Plaintiffs if they have already lost their union membership, licenses and thereby their means of making a living.

Accordingly, a balance of the hardships clearly favors the Plaintiffs.  Should they lose their licenses and membership in the Union the economic effect on them will be devastating. These men have been crane operators for years.  Without a license they cannot legally operate a crane in New York City, where, due to the height of the buildings, the vast majority of the work requiring cranes in the State is done.  Without membership in the Union, even if their licenses were not revoked, it would be very difficult to find work and the little work available would pay significantly less.  There is no harm to either the Union or the DOB if the status quo is maintained during this action, as these men have been licensed Union members for years without issue.

### A.  Duffy, Panessa and Mascarella will Suffer Irreparable Harm if Their License is Suspended or Revoked Due to 2003 Arrest

Plaintiffs will suffer irreparable injury if their Hoisting Machine Operator licenses are suspended or revoked as the result of the improper enforcement of an unconstitutionally vague statute in violation of their due process rights as guaranteed by the Fourteenth Amendment.

The United States Supreme Court has held that a statute that is overly vague violates an alleged offender's Fourteenth Amendment right to due process.  See e.g., <u>Coates v. City of</u>

Cincinnati, 402 U.S. 611, 91 S.Ct. 1686 (1971). The reasoning is that requiring a person to conform with a statute that is so "vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates that first essential due process of law." Connally v. General Const. Co., 269 U.S.385, 46 S.Ct. 126 (1926).

In the instant action, Defendants DOB and LiMANDRI have initiates an OATH proceeding against Defendants based upon the "poor moral character" justification for suspension or revocation of a license under New York City Administrative Code § 28-401.19(13), as well as the "good moral character" requirement to obtain a license under Section 28-401.6 of New York City Administrative Code (the "Administrative Code"). (See Exhibits 6, 6 and 7). These terms are not defined in the Administrative Code and accordingly are unconstitutionally vague.

In fact, the Supreme Court of the State of New York, Bronx County, has held that a similar statute that requires "good moral character" in order to be issued a license was unconstitutionally vague and therefore violated the plaintiff's Fourteenth Amendment right to due process. 164th Bronx Parking, LLC v. Cith of New York. 20 Misc.796, 862 N.Y.S.2d 148 (Sup. Ct. Bronx Co. 2008). The Court stated that this vague standard of good or bad moral character "leaves 'the possibility that the law will be arbitrarily enforced' wide open." Id. at 804. Each of these sections of the New York City Administrative Code, "on its face sets a requirement, 'good [or poor moral] character' that is unconstitutionally vague and violates the due process guarantees under the federal and state Constitutions." Id.

Defendant's violation of Plaintiffs' Fourteenth Amendment rights can be an irreparable injury per se. See, e.g., Henry v. Greenville Airport Commission, 284 F.2d 631 (4th Cir. 1960) ("The District Court has no discretion to deny relief to a person who clearly establishes by

undisputed evidence that he is being denied a constitutional right"); <u>Board of Supervisors of</u> <u>Louisiana State University and Agricultural and Mechanical College v. Wilson</u>, 340 U.S. 909 (1951) (affirming the District Court for the Eastern District of Louisiana's holding in <u>Wilson v.</u> <u>Board of Supervisors of Louisiana State University and Agricultural and Mechanical College</u>, 92 F.Supp. 986 (E.D. La. 1950) that the denial of a right guaranteed by the Fourteenth Amendment constitutes irreparable harm that warranted a preliminary injunction).

Additionally, should the Plaintiffs' Hoisting Machine Operator licenses be suspended or revoked it would cause them significant economic hardship. Without this license, Plaintiffs would be unable to operate cranes in New York City. Naturally, due to the disproportionate amount of skyscrapers in New York City, the majority of projects that require a crane operator in New York State are in New York City. The Plaintiffs are all crane operators by trade operating cranes has been their livelihood for years. MASCARELLA has been a licensed crane operator for over twenty-five (25) years, since 1984. To force him to learn a new trade after working as a crane operator for over 25 years would undoubtedly cause him and his family irreparable harm. Furthermore, the United States Supreme Court has held that where a person is about to lose his or her job in violation of a constitutional right, even for "minimal periods of time," that constitutes irreparable injury and a preliminary injunction should issue. See <u>Elrod v. Burns</u>, 427 U.S. 347, 373-74, 96 S.Ct. 2673 (1976).

**B. Duffy, Panessa and Mascarella will Suffer Irreparable Harm if Suspended or Removed From the Union Due to 2003 Arrest**

Plaintiffs will suffer irreparable injury if their union memberships are suspended, revoked or otherwise altered as a result of their previous convictions, for which they have fully served their sentences, as the Consent Decree was not in effect at the time of their convictions and cannot be applied retroactively.

Besides being a violation of the Consent Decree itself, applying the Consent Decree retroactively for arrests that took place back in 2003, where all three Plaintiffs completed their sentences back in 2005, is a violation of their rights under New York State human rights law and Correction Law. See N.Y. Executive Law § 296, N.Y. Correction Law § 752. This is analogous to the violation of the Plaintiffs' Fourteenth Amendment right to due process, and as such should also be treated as irreparable injury per se.

Plaintiffs will also be irreparably injured if the Union and/or STAMBOULODIS are allowed to proceed with disciplinary hearings against them in that if the Consent Decree is retroactively applied, they would lose all of their retirement benefits. (See Exhibit 1, Summons and Complaint, Exhibit 1 Consent Decree, p. 36-37). This is patently unfair, as this was not the case in 2003 when the Plaintiffs were arrested. Furthermore, being expelled from the Union will also cause Plaintiffs significant economic hardship as even if they are able to keep their licenses, it will be much more difficult to find work as a non-union crane operator and the work that is available will pay them significantly less than if they were in the Union.

## C. Duffy, Panessa and Mascarella Have Probable Success on the Merits

The Complaint sounds in five causes of action. Count I is a violation of the Plaintiffs' Fourteenth Amendment arising out of the DOB and LiMANDRI's attempt to suspend of revoke their Hoisting Machine Operator licenses based upon unconstitutionally vague statutes. Count II is for the Union, STAMBOULODIS, and the Defendants that are Union officials, for violating the Consent Decree by pursuing disciplinary hearings against Plaintiffs', which could result in them being expelled from the Union, based upon their arrests, guilty pleas and resulting sentences, all of which have been completed over five years ago. Counts III and IV are for violations of New York State laws that forbid discrimination against people convicted of a crime

21

that have fully served their resulting sentence. New York Executive Law § 296 and New York Correction Law § 752 both prohibit denying someone a license or barring someone's employment based upon a previous criminal conviction, even when under the guise of a "good moral character" requirement. Count V is for violations of the New York City Administrative Code which, like the New York State laws, forbids discrimination against people convicted of a crime that have fully served their resulting sentence. New York City Administrative Code § 8-107(10)(a) also prohibits denying someone a license or barring someone's employment based upon a previous criminal conviction, even when under the guise of a "good moral character" requirement.

### i. Count I: 42 U.S.C §1983 – Violation of Plaintiffs' 14th Amendment Due Process Rights

The Fourteenth Amendment claim is discussed in detail above in section A which pertains to irreparable injury.

### ii. Count II: 42 U.S.C §1983 – Violation of the Consent Decree

STAMBOULODIS, seemingly with the Union's consent, is seeking to retroactively apply the Consent Decree and punish the Plaintiffs by suspending, and eventually expelling, them from the Union based upon their arrests and subsequent guilty pleas. The Consent Decree, which upon information and belief, has not even been adopted into the Bylaws of the Union yet, was not in effect when the Plaintiffs were arrested. It was not in effect when the Plaintiffs plead guilty and were sentenced. It was not even in effect by the time Plaintiffs completed their sentences and were fully rehabilitated over five years ago. Therefore, there is no way that the Consent Decree can be retroactively applied to 2003 when Plaintiffs were arrested.

The stated goal of the Consent Decree is "to eradicate Corruption (as defined herein) and any organized crime influence within Local 14 [the Union] while preserving the Local's strength

and autonomy as the bargaining agent and representative of its membership . . ." (See Exhibit 1, Summons and Complaint, Exhibit 1 Consent Decree, p. 2). The fact that Plaintiffs plead guilty to a crime over five years ago is not evidence that they are currently involved in any criminal activity. In fact, it violates New York Law to make that assumption. Likewise, the Federal Rules of Evidence prohibit the introduction of prior convictions as "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Federal Rules of Evidence, Rule 404. Accordingly, the Plaintiffs' past convictions have no bearing on the stated goal of the Consent Decree which is to rid the Union of **current** corruption.

Instead, STAMBOULODIS and the Union are using the Consent Decree to conduct a witch-hunt against the Plaintiffs and the other twenty-three (23) members of the Union that were convicted in the two proceedings brought by the United States back in 2003. This was not the purpose of the consent decree. Plaintiffs have served what the United States and the judiciary deemed an appropriate sentence in relation to their guilty pleas. It is not STAMBOULODIS' or the Union's place to further punish them over seven years after the fact. STAMBOULODIS' and the Union are acting as if the Consent Decree states that anyone convicted in those two proceedings can be expelled from the Union on that fact alone.

### iii.    Violation of New York State Human Rights Law, Executive Law § 296

New York State has laws enacted to prevent discrimination against people who were previously convicted of a crime but have served their sentences in full. One of these laws is New York Executive Law § 296 which states in pertinent part:

> It shall be an unlawful discriminatory practice for any person, agency, bureau,
> corporation or association, including the state and any political subdivision
> thereof, to deny any license or employment to any individual by reason of his or
> her having been convicted of one or more criminal offences, or by reason of a

finding of a lack of "good moral character" which is based upon his or her having been convicted of one or more criminal offenses, when such denial is in violation of the provisions of article twenty-three-A of the correction law.

New York Executive Law § 296(15). Both the DOB and the Union have violated this statute by the actions they have taken against the Plaintiffs.

The DOB has violated this statute by commencing OATH proceedings against the Plaintiffs which could result in the suspension or revocation of their Hoist Machine Operator licenses. (See Exhibits 5, 6 and 7). The basis of these hearings is the Plaintiffs' guilty pleas in late 2004 / early 2005. Executive Law § 296(15) plainly states that this cannot be a basis for denying Plaintiffs' their licenses.

Similarly, STAMBOULODIS' and the Union have violated this statute by sending letters to the Plaintiffs stating that they are "considering commencing disciplinary proceedings" against them which could result in the Plaintiffs being suspended or expelled from the Union, which necessarily would adversely affect their employment. (See Exhibit 2). Presumably the basis for these disciplinary proceedings is the Plaintiffs' guilty pleas in late 2004 / early 2005. Executive Law § 296(15) plainly states that this cannot be a basis for denying Plaintiffs' employment.

### iv.    Violation of New York Corrections Law §§750, 752,753 et seq.

Another New York State law enacted to prevent discrimination against people who were previously convicted of a crime but have served their sentences in full is New York Correction Law § 752, which states:

> No application for any license or employment, and no employment or license held by an individual, to which the provisions of this article are applicable, shall be denied or acted upon adversely by reason of the individual's having been previously convicted of one or more criminal offenses, or by reason of a finding of lack of "good moral character" when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless:

> (1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or
>
> (2) the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.

New York Correction Law § 752. Both the DOB and the Union have violated this statute by the actions they have taken against the Plaintiffs.

The DOB has violated this statute by commencing OATH proceedings against the Plaintiffs which could result in the suspension or revocation of their Hoist Machine Operator licenses. (See Exhibits 5, 6 and 7). The basis of these hearings is the Plaintiffs' guilty pleas in late 2004 / early 2005. New York Correction Law § 752 plainly states that this cannot be a basis for denying or acting adversely upon Plaintiffs' licenses.

Similarly, STAMBOULODIS' and the Union have violated this statute by sending letters to the Plaintiffs stating that they are "considering commencing disciplinary proceedings" against them which could result in the Plaintiffs being suspended or expelled from the Union, which necessarily would adversely affect their employment. (See Exhibit 2). Presumably the basis for these disciplinary proceedings is the Plaintiffs' guilty pleas in late 2004 / early 2005. New York Correction Law § 752 plainly states that this cannot be a basis for denying or acting adversely upon Plaintiffs' employment.

     **v.    Violation of New York §8-107 of the New York City Administrative Code**

New York City has also enacted a statute to prevent discrimination against people who were previously convicted of a crime but have served their sentences in full. Section 8-107(10)(a) states:

> It shall be an unlawful discriminatory practice for any person to deny any license or permit or employment to any person by reason of his or her having been

25

convicted of one or more criminal offences, or by reason of a finding of a lack of "good moral character" which is based upon his or her having been convicted of one or more criminal offenses, when such denial is in violation of the provisions of article twenty-three-a of the correction law.

New York City Administrative Code § 8-107(10)(a). Both the DOB and the Union have violated this statute by the actions they have taken against the Plaintiffs.

The DOB has violated this statute by commencing OATH proceedings against the Plaintiffs which could result in the suspension or revocation of their Hoist Machine Operator licenses. (See Exhibits 5, 6 and 7). The basis of these hearings is the Plaintiffs' guilty pleas in late 2004 / early 2005. New York City Administrative Code § 8-107(10)(a) plainly states that this cannot be a basis for denying Plaintiffs' their licenses.

Similarly, STAMBOULODIS' and the Union have violated this statute by sending letters to the Plaintiffs stating that they are "considering commencing disciplinary proceedings" against them which could result in the Plaintiffs being suspended or expelled from the Union, which necessarily would adversely affect their employment. (See Exhibit 2). Presumably the basis for these disciplinary proceedings is the Plaintiffs' guilty pleas in late 2004 / early 2005. New York City Administrative Code § 8-107(10)(a) plainly states that this cannot be a basis for denying Plaintiffs' employment.

### D. Sufficiently Serious Questions Exist That Go to the Merits and the Balance of Hardships Tips Decidedly In Plaintiffs' Favor

As set forth above, there are serious questions that go to the merits of all five counts contained in the Complaint. There is a question as to the legality of the statute under which the DOB is attempting to suspend or revoke Plaintiffs' Hoist Machine Operator Licenses. In fact a New York Supreme Court has already held that a statute containing the same vague requirement of "moral character" was unconstitutionally vague and therefore violated the due process rights

guaranteed by the Fourteenth Amendment. 164th Bronx Parking, LLC v. Cith of New York. 20 Misc.796, 862 N.Y.S.2d 148 (Sup. Ct. Bronx Co. 2008). Likewise, there is a serious question as to whether the Consent Decree can be applied retroactively and in violation of numerous New York State and New York City laws to discriminate against the Plaintiffs based upon a conviction that occurred over five years ago, for which all of them have completed their sentences and are completely rehabilitated. The third through fifth counts are based upon the aforementioned laws that prevent discrimination against people that have been convicted of a crime and have completed their sentences. There is no doubt that the DOB cannot discriminate against the Plaintiffs' as pertains to the status of their Hoisting Machine Licenses. There is also a serious question as to whether the Union can discriminate against them on this same basis, as such discrimination has essentially the same adverse impact on their ability to get gainful employment as if they were to lose their licenses.

The balance of the hardships of the proposed preliminary injunction overwhelmingly tips in the Plaintiffs' favor. The injunction would preserve the status quo, as the Plaintiffs' would continue to work as licensed, Union crane operators as they have ever since they served their sentences. In fact PANESSA's sentence did not even hinder his ability to work. Naturally, should the Plaintiffs' lose their licenses of Union membership, even for a short period of time, the financial effects on these men would be devastating. Furthermore, should the Union and DOB continue their respective actions against these men, their rights under the Constitutional and State law would be violated which is a harm in itself. See, e.g., Henry v. Greenville Airport Commission, 284 F.2d 631 (4th Cir. 1960); Board of Supervisors of Louisiana State University and Agricultural and Mechanical College v. Wilson, 340 U.S. 909 (1951) (affirming Wilson v.

Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 92 F.Supp. 986 (E.D. La. 1950)).

By contrast, the Defendants will not suffer any harm from an injunction as it merely preserves the status quo as the Plaintiffs are already members of the Union and licensed Hoist Machine Operators. The Court has held that maintenance of the status quo is the purpose of an injunction and is not a harm. Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 969 (2d Cir. 1989); Roso-Lino Beverage Distrib., Inc. v. Coca-Cola Bottling Co., 749 F.2d 124 (2d Cir. 1984).

## Conclusion

This Court should grant the preliminary relief requested to prevent suspension, termination of the Plaintiffs' Union membership and the Hoisting Machine Operator License that are presently in effect, and preserve the status quo until hearing and final determination of this action.

Dated: Garden City, New York
      July 6, 2010

                              **La Reddola, Lester & Associates, LLP**

                              By: Robert J. La Reddola, Esq.
                                  *Attorneys for Plaintiffs*
                                600 Old Country Road, Suite 224
                                Garden City, New York 11530
                                (516) 745-1951